**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID AUBLE, et al., | No. CV 08-1822-PHX-MHM |
| Plaintiffs, | **ORDER** |
| vs. | |
| MARICOPA COUNTY, a public entity; MARICOPA COUNTY SHERIFF'S OFFICE, a division of Maricopa County; JOSEPH M. ARPAIO, Maricopa County Sheriff; NEWMARK HOLDINGS I, LLC, a foreign limited liability corporation d/b/a AMAZING JAKE'S FUN & FOOD; and TEHRAN RYLES; et al., | |
| Defendants. | |

On July 16, 2008, Plaintiffs filed a complaint against Defendants, alleging violations under 42 U.S.C. § 1983 and related state-law claims as a result of an incident involving Plaintiffs, a stun gun, and an off-duty Sheriff's Deputy on the premises of Amazing Jake's Fun & Food restaurant in Mesa, Arizona. (Dkt. #1). The complaint was originally filed in the Maricopa County Superior Court and subsequently removed to this Court pursuant to 28 U.S.C. §§ 1441(a), 1331, and 1367(a). (Id.).

Currently pending before the Court are three fully-briefed motions: (1) Motion to Dismiss Maricopa County Sheriff's Office (Dkt. #5); (2) Maricopa County's Motion for Summary Judgment (Dkt. #6); and (3) Newmark Holdings I, LLC's Motion for Summary

Judgment (Dkt. #24). After reviewing the pleadings, this Court determines oral argument is unnecessary. The Motion to Dismiss is treated in a separate Order; the summary judgment motions are treated in this Order.

**I.    BACKGROUND**

On the evening of August 24, 2007, Plaintiffs David Auble ("Auble") and his family were attending a school-sponsored event at Amazing Jake's Fun & Food ("A.J.'s") in Mesa, Arizona. (Dkt. #1). At approximately 8:30 p.m., Auble went to use the restroom and, upon entering, remarked, "This bathroom stinks; it smells like shit." (Id.). Unbeknownst to Auble, Tehran Ryles, an off-duty Sheriff's Deputy working as A.J.'s security guard, was also in the bathroom and overheard the comment. (Id.). As the men left the restroom, Ryles told Auble his language was inappropriate. (Id.). Auble responded, "I agree," and indicated that he and his family were leaving. (Id.). Auble and his family walked outside to the parking lot. (Id.). Ryles followed them. (Id.).

According to the police report, Deputy Ryles then asked Auble for his name and said, "I am going to place handcuffs on you for your safety." (Dkt. #7, Exh.1). Apparently believing Auble's "anger and obvious intoxication" warranted detaining him, Ryles tried grabbing for Auble's arm. (Id.). Auble rebuffed him and continued walking away. (Id.). Ryles tried again, but Auble pulled away. (Id.). Auble then turned to face Ryles and took what Ryles described as "a combative stance." (Id.). Ryles commanded Auble to "[s]top resisting." (Id.). Ryles then drew a Taser and pointed it at Auble, who was standing approximately two feet away. (Id.). Ryles told Auble that he would tase him if he did not stop. (Id.). "Don't tase me," Auble replied and smacked the Taser away. (Id.). Ryles then stepped back as Auble stepped forward, and he fired his Taser at Auble's chest, knocking him down. (Id.). Auble was lying on the ground, apparently motionless, and Ryles reapplied his Taser, shocking Auble a second time. (Id.). Auble's wife and two children stood nearby, watching the entire interaction. (Dkt. #1). Ryles later cited Auble for disorderly conduct. (Dkt. #7).

1    On July 16, 2008, Auble and his family ("Plaintiffs") filed a complaint against, among others, Tehran Ryles, Maricopa County, the Maricopa County Sheriff's Office, Sheriff Joseph Arpaio, and Newmark Holdings I, LLC, the corporation doing business as A.J.'s. (Dkt. #1). Plaintiffs allege violations of 42 U.S.C. § 1983, negligence, gross negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. (Id.). Plaintiffs request compensatory and punitive damages, as well as attorney's fees and costs. (Id.).

On November 3, 2008, Maricopa County filed a motion for summary judgment, alleging Plaintiffs failed to comply with the notice of claim requirement under A.R.S. § 12-821.01, which requires that a plaintiff notify the public entity or employee against whom a claim is brought of "a specific amount for which the claim can be settled." A.R.S. § 12-821.01 (2008). (Dkt. #6). Then, on April 21, 2009, Newmark Holdings filed a motion for summary judgment to dismiss Plaintiffs' claims against A.J.'s, arguing that the actions of Deputy Ryles were outside the scope of his employment. (Dkt. #24).

## II.    MARICOPA COUNTY'S MOTION FOR SUMMARY JUDGMENT

Maricopa County moves for summary judgment on the ground that Plaintiffs failed to comply with the statutory prerequisites for a notice of claim under A.R.S. § 12-821.01. (Dkt. #6). That statute requires that the contents of a party's claim against a public entity contain "a specific amount for which the claim can be settled." A.R.S. § 12-821.01A (2008). Maricopa County asserts that "Plaintiffs failed to specify a sum certain that would settle their cases." (Dkt. #6).

Plaintiffs submitted four notices of claim to Marciopa County, one for Auble, his wife, and each of their two children. (Dkt. #7, Exhs. 1-4). Each notice of claim includes the legal basis for the claim, a summary of the events in question, the basis for liability, and an itemized list of damages, including medical expenses and wage losses. (Id.). Each notice ends with a section entitled "Demand." (Id.) The notice of claim relating to Auble reads as follows:

**DEMAND**

On behalf of David Auble, we submit demand for two million, forty-one thousand and seventeen dollars ($2,041,017) to settle his claims against the County and its employees. Without waiving any federal or state claims for attorneys fees, this demand is separate and apart from court-awarded fees and costs.

(Dkt. #7, Exh. 1).[1]

Maricopa County asserts that "Plaintiffs' claim amount is ambiguous and leaves the Defendants confused about the amount for which they will settle." (Dkt. #6). This ambiguity is created, Maricopa County argues, by the sentence that precedes the "Demand" section, which reads, "In this case attorneys' fees are likely to exceed $150,000 if this matter proceeds to trial." (Dkt. #7, Exh. 1). Plaintiffs respond that that sentence "was meant to preserve the argument for such fees and costs should the matter proceed to trial," and that "[a]ny reference to attorneys' fees were intended to encourage settlement and preserve the claim for such fees should the matter proceed to trail." (Dkt. #16).

### A.  Standard of Review

A motion for summary judgment may be granted only if the moving party shows "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As such, to defeat a motion for summary judgment, the non-moving party must show that there *are* genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249. In addition, in

---

[1] Apart from different claim amounts, the other Plaintiffs' notice of claims are identical. (Dkt. #7, Exhs. 2-4).

- 4 -

evaluating a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmovant. Id. at 255.

**B.     Discussion**

Arizona's notice of claim requirement allows the government entity being sued to investigate and assess its potential liability, permit the possibility of settlement prior to litigation, and assist the entity in financial planning and budgeting. Deer Valley Unified Sch. Dist. v. Houser, 152 P.3d 490, 492 (Ariz. 2007) (quoting Falcon ex rel. Sandoval v. Maricopa County, 144 P.3d 1254, 1256 (Ariz. 2006)) (internal citation, quotations, and punctuation marks omitted). To satisfy the "specific amount" requirement under A.R.S. § 12-821.01A, the notice of claim must "include a particular and certain amount that, if agreed to by the government entity, will settle the claim." Deer Valley 152 P.3d at 493. "Compliance with this statute is not difficult," but "repeated use of qualifying language makes it impossible to ascertain the precise amount" and fails to satisfy the "specific amount" requirement. Id.

In Deer Valley, the plaintiff defined her economic damages as "'*approximately* $35,000 per year *or more* going forward over the next 18 years.'" Id. (emphasis in original). The plaintiff also referred to a raise, and stated that "she anticipated 'similar appropriate pay increases' over the next eighteen years." Id. Moreover, the plaintiff's demand letter stated that "her damages for emotional distress and harm to her reputation are 'no less than' $300,000 and $200,000, respectively." Id. As a result, the state court held that "[t]hese statements simply do not define a specific amount that [plaintiff] would have accepted to resolve her dispute" Id. Therefore, "[i]n light of this substantial variation in potential value and the absence of any clear aggregate claim amount in her letter, the amounts identified in [plaintiff's] letter cannot be considered 'specific.'" Id. at 494.

In Deer Valley, there was repeated use of qualifying language; here there is none. Plaintiffs' demand is a clear aggregate sum that, if agreed to by Maricopa County, would settle all of Plaintiffs' claims.

1    Nevertheless, Maricopa County goes out of its way to interpret the settlement
2    amount ambiguously, arguing that Plaintiffs' reference to attorneys' fees takes away the
3    specificity of any demand. (Dkt. #17). Maricopa County wonders: "Is the settlement
4    demand exclusive of attorneys' fees or not? If not, why are attorneys' fees even
5    mentioned in connection with the demand?" (Id.). But an answer to these questions is
6    contained in the very portion Maricopa County claims is confusing: Plaintiffs specified
7    that their demand was "separate and apart from court-awarded fees and costs." (Dkt. #7,
8    Exh. 1).

9    The Court can find nothing confusing about Plaintiffs' settlement demand and
10   must therefore conclude that any ambiguity complained of by Maricopa County is of their
11   own creation. Plaintiffs' notices of claim satisfy the notice of claim requirement under
12   A.R.S. § 12-821.01A.

**III.   NEWMARK'S MOTION FOR SUMMARY JUDGMENT**

14   Newmark Holding I, LLC ("Newmark"), a corporation doing business as A.J.'s,
15   moves for summary judgment, asserting that Plaintiffs' claims against it should be
16   dismissed because the actions of Deputy Ryles "were outside the scope of his
17   employment with Amazing Jakes, and therefore Amazing Jake's is not vicariously liable
18   for Deputy Ryles's conduct." (Dkt. #24).

19   In Arizona, "the act of an employee during the course of his employment is legally
20   the act of the employer." Driscoll v. Harmon, 601 P.2d 1051, 1052 (Ariz. 1979). As
21   there is no dispute that Deputy Ryles was employed by A.J.'s as a security guard on the
22   evening of August 24, 2007, the only issue this Court must resolve is whether Ryles was
23   acting within the course of his employment for A.J.'s when the events in question took
24   place.

25   Under Arizona law, the conduct of an employee lies within the scope of
26   employment if: (1) it is of the kind the employee is employed to perform; (2) it occurs
27   substantially within the authorized time and space limit; and (3) it is actuated at least in
28   part by a purpose to serve the master. Olson v. Staggs-Bilt Homes, Inc., 534 P.2d 1073,

- 6 -

1076 (Ariz. Ct. App. 1975) (citing RESTATEMENT (SECOND) OF AGENCY § 228(1)); accord Smith v. Am. Express Travel Related Servs. Co., 876 P.2d 1166, 1170 (Ariz. Ct. App. 1994).

Here, when asked whether it was his job to police A.J.'s parking lot, Ryles answered, "There are times when I've gone into the parking lot. Patrons sometimes stand in the parking lot and drink alcohol, at which time I have to go out and confront them and deal with that as well." (Dkt. #31, Exh. 1). Then, when asked whether A.J.'s "wants you to do that," he replied, "Yes." (Id.).[2]

Those statements appear to satisfy all three elements of the "scope of employment" analysis. As to the first element, Deputy Ryles clearly indicated that his actions were of the kind he is employed to perform; this was not the first time that Ryles had gone out to patrol the parking lot.

In addition, the second element merely requires that Ryles's actions occurred substantially within the authorized time and space limit. And because the events at issue occurred in the parking lot in front of A.J.'s, an area that Ryles is apparently authorized and commanded to patrol as a private security officer, this element also appears to have been met.

The final element of the analysis requires only that Deputy Ryles's actions be actuated in part by a purpose to serve his employer. Ryles's testimony suggests that, whatever other motivations may have played a role, Ryles believed his actions served the interests of A.J.'s.

Therefore, at the very least, there is a genuine issue of material fact with respect to whether Deputy Ryles was acting within the scope of his employment as a security guard

---

[2]Newmark pins much of its argument on statements made by Auble during his deposition. Newmark points to statements that Auble made to the effect that he believed that Ryles's actions went beyond the scope of what a security guard should do at a restaurant. (Dkt. #24). But Auble's opinions do not prove the legal conclusion that Ryles acted outside the scope of employment.

for A.J.'s during the time in question. As such, the Court must deny Newmark's motion for summary judgment.³

**Accordingly,**

**IT IS HEREBY ORDERED** denying Defendant Maricopa County's Motion for Summary Judgment. (Dkt. #6).

**IT IS FURTHER ORDERED** denying Defendant Newmark Holdings's Motion for Summary Judgment. (Dkt. #24).

DATED this 29th day of September, 2009.

Mary H. Murguia
United States District Judge

---

³Newmark also argues that it cannot be held liable because Deputy Ryles was acting in his capacity as a police officer, not a private employee, when he detained, tased, and arrested Auble. (Dkt. #30). However, Newmark raises this argument for the first time in its reply brief. As such, it has been waived. See Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir. 1990) (holding that legal arguments raised for the first time in the reply brief are deemed waived).